**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ASHLEY ANN STANLEY KELLETT** | **CIVIL ACTION** |
| **VERSUS** | **No. 26-2168** |
| **LOUISIANA STATE BOARD OF NURSING, ET AL.** | **SECTION I** |

# ORDER AND REASONS

Before the Court is *pro se* plaintiff Ashley Ann Stanley Kellett's ("plaintiff") complaint[1] filed on September 24, 2026. For the following reasons, the Court transfers this case to the United States District Court for the Western District of Louisiana ("Western District").

## I. BACKGROUND

Plaintiff filed her lawsuit against forty-five individuals and entities[2] spread across Louisiana.[3] Because of the inartful way the complaint is drafted and the

[1] R. Doc. No. 1. The complaint is eighty-seven pages, and plaintiff attaches 472 pages of exhibits and appendices.
[2] Some of the defendants are state governmental entities. The Court does not determine whether it has subject matter jurisdiction over these entities in this order. Plaintiff also names state officials as defendants. She names some of these officials in their official capacities, *e.g.*, *id.* ¶ 17, yet "seeks personal-capacity damages for officials' actionable conduct." *Id.* ¶ 193. It is therefore not clear whether her claims are against the state governmental officials in their individual capacities, official capacities, or both.
[3] Plaintiff initially filed her complaint against forty-five defendants. *See generally id.* On October 2, 2026, plaintiff filed a motion requesting to add as defendants the New Orleans field office of the United States Equal Employment Opportunity Commission ("New Orleans EEOC"), "Michael Kirkland, Director of the New Orleans Field Office; Vince Emanuel, Investigator identified in Plaintiff's charge records; and Rudy L. Sustaita, Regional Attorney." R. Doc. No. 12, at 7–8. Plaintiff lists the New Orleans EEOC, Michael Kirkland, and Vince Emanuel as being located within the United States District Court for the Eastern District of Louisiana ("Eastern District"). R. Doc. No. 16-1, at 136, 379, 382. Plaintiff lists Rudy L. Sustaita as being located in

multitude of exhibits plaintiff attaches, it is difficult to decipher her exact factual allegations. The Court endeavors to capture her claims, but "[j]udges are not like pigs, hunting for truffles buried in [legal filings]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

Through a sprawling set of factual allegations, plaintiff alleges that her August 2021 disclosure to her maternal aunt that her uncle raped and sexually assaulted her during her childhood[4] culminated in the retaliatory suspension of her nursing license and her removal from Louisiana State University at Alexandria ("LSUA").[5] She contends that since her August 2021 disclosure, she has been subjected to numerous[6] connected wrongdoings, including law enforcement's failures to adequately investigate her complaints,[7] the state's unlawful removal of her children[8] to dangerous temporary placements,[9] unethical attorney conduct in her late father's

---

Houston, Texas. *Id.* at 385. The Court declines to rule on plaintiff's motion to add these defendants. Even if the New Orleans EEOC, Michael Kirkland, and Vince Emanuel were to be added as defendants in this case, their alleged connections with the Eastern District are not substantial enough to alter the Court's venue analysis.

In addition, on October 5, 2026, plaintiff filed a "motion to accept and lodge corrected AO 440 summonses and USM-285 process receipt[s] and return forms," which includes summonses and process receipts for 150 defendants. *See generally* R. Doc. No. 16. She does not provide any argument or context as to why these individuals and entities should be added as defendants, and thus the Court will not consider these proposed defendants in its analysis. *See generally id.*

[4] R. Doc. No. 1 ¶ 27.

[5] *Id.* ¶ 126.

[6] Given the prolix nature of plaintiff's filings, this account is based on the allegations in her complaint.

[7] *E.g.*, *id.* ¶¶ 30, 32, 55, 71.

[8] *Id.* ¶ 58.

[9] *Id.* ¶ 65.

mesothelioma litigation,[10] and improper allocation of her father's estate.[11] She also claims that her daughter's school district "repeatedly failed or refused to provide [her] meaningful special-education services, timely [Individualized Education Program] participation, accurate information concerning personnel, and individualized instruction."[12]

It appears that plaintiff's most immediate and focused allegations center on her nursing education. Plaintiff was previously enrolled in an "RN-to-BSN [registered nurse to Bachelor of Science in Nursing] program" at LSUA,[13] located in Alexandria, Louisiana. She claims that the Louisiana State Board of Nursing ("LSBN") began investigating her following her February 14, 2023 arrest for "attempting to see or check on her disabled daughter" after the Louisiana Department of Children & Family Services "removed three of Plaintiff's children" from her custody.[14] The investigation continued, and the LSBN held a hearing pertaining to her nursing license on August 26, 2026.[15] The LSBN suspended plaintiff's license the next day.[16] Then, on September 1, LSUA "terminated Plaintiff's RN-to-BSN enrollment because of the status of her RN license."[17] She allegedly has one course remaining in her program, which she is no longer authorized to complete.[18] She argues that all these

---

[10] *Id.* ¶ 74.
[11] *Id.* ¶ 94.
[12] *Id.* ¶ 132.
[13] *See id.* ¶¶ 99–100.
[14] *Id.* ¶¶ 58, 61–63.
[15] *Id.* ¶ 115.
[16] *Id.* ¶ 125.
[17] *Id.* ¶ 126.
[18] *Id.* ¶ 100.

events are connected and amount to a retaliatory scheme perpetuated by various public and private actors.[19]

On September 24, 2026, plaintiff filed a lawsuit in the Eastern District. She alleges claims[20] for (1) violations of her First Amendment rights pursuant to 42 U.S.C. § 1983;[21] (2) violations of her procedural due process rights;[22] (3) violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, and unlawful retaliation and interference in violation of 42 U.S.C. § 12203 and 28 C.F.R. § 35.134;[23] (4) unlawful interference with parental rights and family integrity;[24] (5) violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, and violations of 42 U.S.C. § 12131 and 29 U.S.C. § 794 on behalf of her daughter;[25] (6) knowing fabrication or use of materially false records;[26] (7) conspiracy to deprive her of her rights in violation

---

[19] *Id.* ¶¶ 139–49.
[20] Before listing her causes of action, plaintiff states that she "also requests examination of whether the alleged coordinated structure and repeated acts satisfy the federal racketeering statutes, 18 U.S.C. [§§] 1961[–]1964. . . . Any distinct civil RICO count must state those elements and fraud particulars under Rule 9(b)." *Id.* ¶ 156. Because plaintiff fashions this statement as a request to the Court to investigate whether she may bring a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1964, and she does not include a distinct RICO count in the complaint as she states she must, the Court does not interpret this as a cause of action.
[21] R. Doc. No. 1 ¶¶ 158–59.
[22] *Id.* ¶¶ 160–61.
[23] *Id.* ¶¶ 162–63.
[24] *Id.* ¶¶ 164–65.
[25] *Id.* ¶¶ 166–67.
[26] *Id.* ¶¶ 168–69.

of 42 U.S.C. § 1983;[27] (8) denial of meaningful access to courts;[28] (9) "entity liability;"[29] (10) "intentional wrongdoing," defamation, property interference, false statements, unlawful detention, negligence, intentional infliction of emotional distress, and succession and trust interference;[30] and (11) violations of 42 U.S.C. § 1985(2),[31] which is a statute addressing a conspiracy to interfere with civil rights. She also requests that the government conduct various criminal investigations on her behalf.[32]

In addressing her present choice of venue[33] in the Eastern District, plaintiff concludes, without substantiation, that "[v]enue is alleged to be proper in the Eastern District of Louisiana under 28 U.S.C. § 1391 because a substantial part of the events, communications, defendants, injuries, and continuing consequences pleaded herein occurred within or are connected to this District."[34] The Court now raises the issue of venue sua sponte.

## II. LEGAL STANDARD

"Under the transfer statute, a district court may transfer a case upon a motion or sua sponte." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th

---

[27] *Id.* ¶¶ 170–71.
[28] *Id.* ¶ 172.
[29] *Id.* ¶ 173.
[30] *Id.* ¶¶ 174–75.
[31] *Id.* ¶ 176.
[32] *Id.* ¶¶ 177–79.
[33] Plaintiff has filed cases with overlapping facts across other federal courts. All of these cases have been dismissed. *Kellett v. United States*, No. 24-455 (Fed. Cl.), *aff'd* No. 24-1712 (Fed. Cir.); *Kellett v. Livingston Par. Sch. Dist.*, No. 24-252 (M.D. La.) (dismissing case as to four out of five defendants and closing the case); *Kellett v. U.S. Dep't of Just.*, No. 25-2267 (D.D.C.), *appeal dismissed* No. 26-5135 (D.C. Cir.).
[34] R. Doc. No. 1 ¶ 13.

Cir. 1987) (per curiam). "The district court has broad discretion in deciding whether to order a transfer." *Id.* If a case has been filed in a proper venue but transfer is appropriate, the court must transfer, and not dismiss, the case pursuant to 28 U.S.C. § 1404. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). A district court may transfer a case pursuant to 28 U.S.C. § 1404 if two conditions are satisfied. First, the case can only be transferred to a venue in which it "might have been brought." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting 28 U.S.C. § 1404(a)). Pursuant to the general venue statute,[35]

---

[35] The general venue statute, 28 U.S.C. § 1391, provides multiple options to establish proper venue. They are as follows:

> (a) Applicability of Section.—Except as otherwise provided by law—
>
> > (1) this section shall govern the venue of all civil actions brought in district courts of the United States; and
> > (2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.
>
> (b) Venue in General.—A civil action may be brought in—
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §§ 1391(a)–(b).

Additionally, there is a specific venue provision for civil claims brought pursuant to RICO, 18 U.S.C. §§ 1961–1964: "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).

28 U.S.C. § 1391(b), "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Second, the destination venue must be "clearly more convenient than the venue chosen by the plaintiff." *Planned Parenthood*, 52 F.4th at 629 (quoting *Volkswagen*, 545 F.3d at 315). There must be good cause for a transfer. *See Volkswagen*, 545 F.3d at 315. "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* "When . . . the transferee venue is clearly more convenient, however, [there is] good cause and the district court should therefore grant the transfer." *Id.*

In the Fifth Circuit, courts weigh the factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine if a venue is clearly more convenient. *Planned Parenthood*, 52 F.4th at 630. These factors consist of four "private interest factors" and four "public interest factors:"

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (alterations omitted) (quoting *Volkswagen*, 545 F.3d at 315).

The factors "are not necessarily exhaustive or exclusive," and none "can be said to be of dispositive weight." *Id.* (quoting *Volkswagen*, 545 F.3d at 315). Transfer is

only justified if "the marginal gain in convenience will be *significant*" and "those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis in original).

## III. ANALYSIS

This case should be transferred to the Western District, because it is a "clearly more convenient" forum for this dispute. *See Volkswagen*, 545 F.3d at 315. As an initial matter, this lawsuit might have been filed in the Western District. Pursuant to 28 U.S.C. § 1391(b)(2), LSUA, the site of the central dispute regarding plaintiff's removal from her registered nurse to Bachelor of Science in Nursing program,[36] is located in the Western District.[37] She also alleges that other key events took place in the Western District, such as her February 2023 arrest in Monroe, Louisiana that led to the LSBN's investigation into her nursing license.[38] To be sure, plaintiff alleges that some events occurred in the United States District Court for the Middle District of Louisiana ("Middle District"), such as her disputes with the Livingston Parish School Board[39] and her late father's mesothelioma litigation.[40] She also claims that

[36] Courts may take judicial notice of "a clear adjudicative fact: geographical location." *United States v. Herrera-Ochoa*, 245 F.3d 495, 502 (5th Cir. 2001).
[37] The Court does not have enough information to determine whether venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Regardless, venue is proper in the Western District because plaintiff's allegations satisfy the standard set out in 28 U.S.C. § 1391(b)(2). In addition, it is not necessary to determine whether venue is proper pursuant to RICO, 18 U.S.C. § 1965(a), because plaintiff does not plead a civil RICO violation as a cause of action.
[38] R. Doc. No. 1 ¶¶ 61, 63.
[39] *E.g.*, *id.* ¶¶ 33, 35, 53–54.
[40] *Id.* ¶ 72.

some events, such as the alleged LSBN investigation[41] and her alleged childhood rape and sexual assault,[42] occurred without ascribing a clear location to those events. However, plaintiff presents all these events as culminating in her removal from LSUA in the Western District,[43] making that location the one in which a substantial part of the events in the complaint led to and ultimately occurred. The Court thus moves to step two of the analysis.

The first private interest factor, "the relative ease of access to sources of proof," weighs slightly in favor of transfer. This "factor focuses on the location of 'documents and physical evidence relating to the case.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (alteration omitted) (quoting *Volkswagen*, 545 F.3d at 316). Though discovery has not begun, plaintiff identifies probable sources of information in her complaint, which include messages, emails, metadata, and audio files.[44] While this is likely not an exhaustive list of possible sources of information, what is clear is that plaintiff is mostly seeking electronically available information. "[W]hen 'the vast majority of the evidence is electronic, and therefore equally accessible in either forum,' this factor bears less strongly on the transfer analysis." *Id.* at 358–59 (alterations omitted) (quoting *Planned Parenthood*, 52 F.4th at 630).

To the extent there is any physical evidence, it is likely to be predominantly located in the Western and/or Middle Districts. These are the districts where plaintiff

---

[41] *Id.* ¶¶ 63, 102.
[42] *Id.* ¶ 27.
[43] *See id.* ¶¶ 139–43.
[44] *Id.* at 55–62.

contends most of the parties reside,[45] and where most of the events alleged in the complaint occurred.[46] *See Planned Parenthood*, 52 F.4th at 630 ("The location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature."). There is no indication in the complaint that any physical evidence is located in the Eastern District. Thus, this factor weighs slightly towards a transfer.

The second factor, "the availability of compulsory process to secure the attendance of witnesses," is neutral. This factor focuses on nonparty witnesses. *See TikTok*, 85 F.4th at 360. A court may subpoena a nonparty witness to appear for a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense" in doing so. Fed. R. Civ. P. 45(c)(1)(A)–(B). At this stage of the litigation, and before plaintiff has effectuated service on all the defendants, it is unknown who will be a nonparty witness, and whether those witnesses will be willing to testify. "The availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *TikTok*, 85 F.4th at 360 (quoting *Planned Parenthood*, 52 F.4th at 630–31). As such, this factor is neutral.

---

[45] *See generally* R. Doc. No. 1-3.

[46] *E.g.*, R. Doc. No. 1 ¶¶ 17 (LSUA), 31 (Baton Rouge Police Department), 33 (Livingston Parish School Board), 37 (East Baton Rouge Parish Sheriff's Office), 46 (9029 Jefferson Highway, Suite 300, Baton Rouge, LA), 61 (Monroe, LA), 65 (St. Mary's Residential Training School), 72 (Nineteenth Judicial District Court).

The third factor, "the cost of attendance for willing witnesses," is also neutral. The Fifth Circuit "assesses convenience as a function of distance." *Clarke*, 94 F.4th at 514. If the two venues are more than one hundred miles apart, "the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* All the divisions of the Western District are located more than one hundred miles from the courthouse in the Eastern District. However, as with the second factor, the Court does not have information with respect to who will be a witness, the distance they will travel, or the cost for those witnesses to attend a proceeding in the Western District. Thus, this factor does not bear on the Court's analysis.

The final private interest factor, the "practical problems that make trial of a case easy, expeditious and inexpensive," weighs in favor of transfer. Plaintiff resides in the Middle District.[47] Plaintiff also does not list an address in this district for any of the initial forty-five defendants, and, in a later filing, she moves to add only three defendants she claims are based in the Eastern District.[48] It would not be easy, expeditious, or inexpensive for so many parties to travel outside of their home districts to a location with little connection to the facts alleged in the complaint. It is also of no practical import that a transfer may slightly delay the progression of this case, as "garden-variety delay associated with transfer is not to be taken into

[47] *See id.* at 87.
[48] R. Doc. No. 12, at 7–8; R. Doc. No. 16-1, at 136, 379, 382.

consideration." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) (per curiam). Overall, the "practical problems" weigh in favor of transfer.

The public interest factors, to the extent they are applicable, also point towards transfer. The first public interest factor, "the administrative difficulties flowing from court congestion," is neutral. The docket of the Eastern District is not congested, and the Court cannot speculate as to the caseload of the Western District. This factor is neutral.

The second public interest factor, "the local interest in having localized interests decided at home," weighs strongly in favor of transfer. This "is one of the most important factors in venue determinations." *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022)). In evaluating this factor, courts "look not to 'the parties' significant connections to each forum,'" "but rather the significant connections between a particular venue and the events that gave rise to a suit." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). Plaintiff lists events in the Middle and Western Districts in her complaint.[49] Between the two, the Western District is the more convenient venue. This is because the most critical action giving rise to this lawsuit is plaintiff's removal from LSUA, an institution located in the Western District. Plaintiff contends that her removal is the culmination of a complicated retaliatory scheme against her, making the events at LSUA the focal

[49] *E.g.*, R. Doc. No. 1 ¶¶ 17 (LSUA), 31 (Baton Rouge Police Department), 33 (Livingston Parish School Board), 37 (East Baton Rouge Parish Sheriff's Office), 46 (9029 Jefferson Highway, Suite 300, Baton Rouge, LA), 61 (Monroe, LA), 65 (St. Mary's Residential Training School), 72 (Nineteenth Judicial District Court).

point of her claims. She also describes the alleged harms from her removal as "continuing,"[50] indicating that the events in plaintiff's complaint have an enduring connection to the Western District.

To be sure, plaintiff claims that the New Orleans EEOC and several of its employees harmed her in a later motion,[51] though she does not include any specific allegations against the New Orleans EEOC or its employees in her complaint. However, even if these proposed defendants do reside in the Eastern District, plaintiff does not explain why this amounts to a significant connection between the Eastern District and "the events that gave rise to [the] suit." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). Even within her motion naming these proposed defendants, plaintiff emphasizes the alleged harm in the Western District related to LSUA, stating that she requests "immediate relief preserving her nursing-license and educational status, including the ability to register for, access, attend, complete, and receive grading for NURS 4052 and to satisfy and process the remaining requirements for conferral of her BSN degree."[52] Overall, this factor weighs strongly in favor of transfer.

The third public interest factor, "the familiarity of the forum with the law that will govern the case," is neutral. "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *Id.* at 365 (quoting *Radmax*, 720 F.3d at 289). This case only presents questions of federal and Louisiana state law, which both this Court and the Western District are equipped to hear.

---

[50] R. Doc. No. 12, at 12.
[51] *Id.* at 7–8.
[52] *Id.* at 9.

Similarly, the fourth public interest factor, "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law," is neutral, as there are no apparent conflict of laws or foreign law issues in this dispute.

And while plaintiff did choose to file her claims in this Court, this is a less compelling consideration here, because plaintiff does not reside in this district.[53] *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) ("The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."); *Britt v. Jan Tran Inc.*, No. 10-1979, 2011 WL 1117124, at *3 (E.D. La. Mar. 23, 2011) (Lemelle, J.) ("The Court will afford less deference to the Plaintiff's choice if the Plaintiff does not reside in that chosen forum.").

Altogether, while some factors are neutral, the remainder point towards transferring this case to the Western District. Therefore, transfer is appropriate. *See TikTok*, 85 F.4th at 366 (transferring case when "not a single factor weighs in favor of refusing transfer").

## IV. CONCLUSION

**IT IS ORDERED** that the above-captioned matter is **TRANSFERRED** to the United States District Court for the Western District of Louisiana.

New Orleans, Louisiana, October 19, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

[53] *See* R. Doc. No. 1, at 87.